**TRAVEL CRAFT, INC., Appellant (Plaintiff Below),**

v.

**WILHELM MENDE GmbH & CO., Appellee (Defendant Below).**

No. 20A03–8807–CV–232.

Court of Appeals of Indiana, Third District.

Feb. 6, 1989.

Michael A. Cosentino, William J. Cohen, Elkhart, for appellant.

Robert W. Miller, Elkhart, for appellee.

STATON, Judge.

Travel Craft, Inc. appeals the trial court's summary judgments in favor of Wilhelm Mende GmbH & Company (Mende). This appeal raises three issues, which we consolidate and restate as:

1) Whether the trial court erred in determining as a matter of law that Mende did not breach its express warranty.

2) Whether the trial court erred in determining that parol evidence is not admissible to prove the existence of other warranties.

We affirm.

Travel Craft manufactures motor homes and recreational vehicles. Travel Craft and Mende entered into a contract whereby Mende would sell to Travel Craft Alu–Span, for use in manufacturing the motor homes. Travel Craft had to recall over a hundred motor homes when the Alu–Span cracked, separated, and blistered. As a result, Travel Craft brought this action against Mende alleging it breached certain express and implied warranties.

## I.

### Standard of Review

On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party. *Schrader v. Mississinewa Community School Corp.*

(1988), Ind.App., 521 N.E.2d 949, 952. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Aetna Ins. Co. of Midwest v. Rodriquez* (1987), Ind.App., 504 N.E.2d 1030, 1032, *reversed on other grounds,* 517 N.E.2d 386, *reh. denied.*

## II.

### Express Warranty

Travel Craft first raises the issue whether the trial court erred in ruling as a matter of law that Mende did not breach its express warranty. After negotiating warranty terms, Travel Craft sent a letter to Mende setting out a warranty it found acceptable. Mende approved this provision. The warranty provides in relevant part:

> The seller agrees for a period of three years from the date of delivery that the product manufactured by it will be free under normal use from substantial defects in materials or workmanship.

(R. 8)

The arguments made by the parties and the trial court's decision revolve around whether there was evidence that the product was defective. The trial court found that the evidence indicated that under tensile tests the Alu–Span samples failed under a 131 pound load and a 177 pound load. Mende's expert testified that normal, undefective aluminum could be expected to fail with a load between 130 and 170 pounds in a standard tensile test. Thus, because the Alu–Span failed where it would be expected to, Travel Craft did not prove it was defective. However, this finding alone is not sufficient to conclude that Mende did not breach its express warranty.

The warranty states that the product "will be free *under normal use* from substantial defects in materials or workmanship." (Our emphasis.) It is not apparent from the language in the warranty itself what "normal use" means. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. *Scott v. Anderson Newspapers, Inc.* (1985), Ind. App., 477 N.E.2d 553, 559, *trans. denied.*

Parol evidence may be considered when the meaning is ambiguous and the determination of the facts upon which the construction of the contract rests becomes a matter for the fact finder. *McGann and Marsh Company, Inc. v. K & F Mfg. Co., Inc.* (1979), 179 Ind.App. 411, 385 N.E.2d 1183, 1187, *trans. denied.* In the present case, whether the warranty was breached cannot be determined without determining what "normal use" means and whether Travel Craft was using the Alu–Span in a normal manner. IC 26–1–2–202 provides:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.
>
> (a) by course of dealing or usage of trade ... or by course of performance ... and
>
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

It is instructive to note the official comment to this section:

> 2. Paragraph (a) makes admissible evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Such writings are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used.

U.C.C. § 2–202 comment 2.

■ Given that parol evidence is admissible to explain the meaning of "normal use" as that term is used in the express warran-

ty, we turn now to the question whether a genuine issue of fact exists whether Travel Craft was using the Alu–Span in a normal manner. The evidence submitted by Mende indicates that using Alu–Span in the construction of motor homes as Travel Craft did is not a normal use because it is not designed to withstand the stress. If there is conflicting evidence that Alu–Span normally is used for sidewall in the construction of motor homes, it was Travel Craft's duty to bring that evidence before the court. When a motion for summary judgment has been made and supported as required by T.R. 56(E), the adverse party may not rest on the mere allegations or denials of his pleadings but must respond by affidavit or otherwise, to set forth the specific facts showing there is a genuine issue for trial. *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 755, *trans. denied.* Travel Craft failed to do this and the trial court correctly determined from the evidence before it that Mende did not breach the express warranty.

### III.

### *Other Warranties*

Travel Craft next raises the issue whether the trial court erroneously refused to consider parol evidence of other express and implied warranties. Mende contends that any other warranties were excluded by the disclaimer. IC 26–1–2–316 provides, in part:

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this UCC Article on parol or extrinsic evidence (IC 26–1–2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

Pursuant to § 2–202, set out above, the trial court did not permit parol evidence of any express or implied warranties, prohibiting Travel Craft from showing that the disclaimer is inoperative.

■ Travel Craft argues that whether the warranty and disclaimer provision was intended to be a final expression of their agreement with respect to warranties is a question of fact which the trial court should not have decided on summary judgment. Travel Craft is mistaken. IC 26–1–2–202(b) specifically states "unless *the court* finds the writing" was intended to be a complete and exclusive statement. (Our emphasis.)

■ The entire written warranty and disclaimer agreed to by the parties reads as follows:

The seller agrees for a period of three years from the date of delivery that the product manufactured by it will be free under normal use from substantial defects in materials or workmanship. There are no other warranties, express or implied. If any product fails within three years to be free from substantial defects in material or workmanship, seller agrees to repair or replace the product, F.O.B. buyer's receiving dock, Elkhart, Indiana. This warranty includes the cost of the product and the cost of repairs or replacement of the product and any other damage that is caused by the product defect. Seller agrees to maintain insurance convering [sic] personal injury in an amount of DM $2,000,-000.00,—for each occurrence (not to exceed DM $1,000,000.00—per individual), and for property damage and repair and replacement of product in accordance with the warranty described in this paragraph of DM $500,000.00—each occurrence. Seller agrees to furnish to buyer a letter, on an annual basis, from the insurance carrier detailing the terms and amounts of coverage.

(R. 8.) We agree with the trial court's conclusion

that the extrinsic evidence presented in connection with this motion, together with the written warranty agreement, clearly shows that the parties intended the written warranty to represent the final expression of their agreement with regard to the warranties. This conclusion is supported by the facts, namely, that the warranty was specifically negotiated over by the parties, no other written warranty has been executed since, nor does the document refer to any other prior or contemporaneous agreement.

(R. 255.) The trial court did not err in excluding evidence of other warranties.

■ Travel Craft also argues that the implied warranty of merchantability was not effectively disclaimed pursuant to IC 26–1–2–316(2) [1] because the disclaimer did not use the term "merchantability." Generally, § 2–316 is strictly interpreted and a disclaimer will not be found effective unless it mentions "merchantability." *Agrarian Grain Co. v. Meeker* (1988), Ind.App., 526 N.E.2d 1189, 1192, *reh. pending.* The policy behind this is to protect the buyer from "unexpected and unbargained language of disclaimer" by permitting exclusion of implied warranties "only by conspicuous language or other circumstances which protect the buyer from surprise." UCC § 2–316 comment 1.

We find it difficult to strictly apply this provision here where the buyer drafted the warranty provision. The trial court relied on a similar California case to find that Travel Craft could not seek protection from § 2–316.

Although [Buyer] may not have bargained with the [Seller] for the design of the crane the "performance" specifica-

---

**1.** (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the fact hereof."

(3) Notwithstanding subsection (2):
· (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

tions submitted by appellant contained an express warranty. The clause written into [Buyer's] specifications limited [Seller's] liability for defects to 18 months from the date of the crane's delivery. In addition to the time constraint, the warranty provision expressly waived all "other" implied warranties, except for title to the crane's component parts. [Seller] contends that [Buyer's] own clause bars [Buyer's] action on the implied warranties of merchantability and fitness for a particular purpose under Commercial Code section 2–316.

In this instance, [Buyer] cannot seek statutory protection from "unexpected and unbargained language of disclaimer" through a claim of "buyer's surprise" because [Buyer] drafted the warranty provision here. (Cf. *Hauter v. Zogarts* 1975), 14 Cal.3d 104, 119–120, 120 Cal. Rptr. 681, 534 P.2d 377.) [Buyer] had fair notice of the limitations within its own term. Due to the reasonable equality of bargaining power between the parties here, freedom of contract wins approval on the issue of warranty liability. *Southern California Edison Co. v. Harnischfeger Corp.* (1981), 120 Cal.App.3d 842, 175 Cal.Rptr. 67, 75–76 (footnote omitted).

We are persuaded by this analysis that Travel Craft's own writing effectively disclaims the implied warranty of merchantability. The trial court did not err in finding that Travel Craft is limited to the express warranty in the written agreement.[2]

AFFIRMED.

GARRARD, P.J., concurs in part and concurs in result in part with opinion.

SULLIVAN, J., concurs in result without opinion.

---

**2.** As to the "disclaimer" issue, Judge Sullivan has concurred in result. He does not agree that the buyer, Travel Craft, Inc., has lost the protection afforded by the statute. The purpose of the statute and the policy of the Indiana Legislature was to protect the buyer from "unexpected and unbargained language of disclaimer" and to protect the buyer from "surprise". Travel Craft, Inc., drafted the express warranty clause and negotiated its terms.

GARRARD, Presiding Judge, concurring in part and concurring in result in part.

I concur with the majority except in its determination that Travel Craft's draftsmanship precludes it from asserting that there existed an implied warranty of merchantability.

I agree that Travel Craft cannot claim there was unexpected and unbargained language of disclaimer.

Even so, the language of our statute is clear and succinct. IC 26–1–2–316(2) expressly mandates that in order to exclude or modify the implied warranty of merchantability, a disclaimer must mention "merchantability."[1] Our decisions have strictly enforced this requirement. *See, e.g., Agrarian Grain Co., Inc. v. Meeker* (1988), Ind.App., 526 N.E.2d 1189.

Furthermore, with the language of the statute available to them, it is as easy to speculate that the parties intended to keep that implied warranty alive as it is to speculate that they intended to exclude it.

Under the circumstances I would conclude that the desirability of certainty in the law, together with the clearly expressed mandate of the legislature, outweigh the equitable value of imposing responsibility on the draftsman. I would thus conclude that an implied warranty of merchantability existed.

Having so said, I nevertheless concur in the result reached because the error in excluding merchantability was harmless.

The claim arose within the three-year period of the express warranty so there can be no material contention that an implied warranty would have covered a longer period.

---

Judge Garrard also concurs in result in regard to the "disclaimer" issue, but notes that the claim was within the three years of the express warranty "so there can be no material contention that an implied warranty would have covered a longer period."

**1.** There are expressed exceptions, as where the article is sold "as is." IC 26–1–2–316(3). They have no application here.

In all other respects the implied warranty of merchantability was subsumed by the express warranty against substantial defects in materials or workmanship under normal use. All the implied warranty requires is that the goods be of average grade, quality and value and fit for the ordinary (normal) purposes for which such goods are used. *Woodruff v. Clark Co. Farm Bureau Co-Op Ass'n.* (1972), 153 Ind.App. 31, 286 N.E.2d 188.

Thus, the critical facts recorded by the majority in considering the express warranty are equally dispositive of the claim for implied warranty of merchantability.